**ORIGINAL**

**In the United States Court of Federal Claims**

No. 10-822C

(Filed: August 2, 2012)

**FILED**

AUG 2 2012

U.S. COURT OF
FEDERAL CLAIMS

*************************************
                                    )
**SANDRA G. HALE,**                 )   Military pay and allowances; review of
                                    )   action by military corrections board;
         Plaintiff,                 )   promotion claim; right to prior-service
                                    )   enlistment bonus; 37 U.S.C. § 308i;
   v.                               )   money mandating source; propriety of
                                    )   discharge
**UNITED STATES,**                  )
                                    )
         Defendant.                 )
                                    )
*************************************

Sandra G. Hale, *pro se*, Spring, Texas.

Vincent D. Phillips, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Captain Rachel A. Landsee, United States Army Litigation Division, Fort Belvoir, Virginia.

**ORDER FOR FINAL JUDGMENT**

LETTOW, Judge.

This case returns to the court after a remand to the Army Board for Correction of Military Records ("Army Board" or "ABCMR"). *See Hale v. United States*, No. 10-822C, 2011 WL 2268961 (Fed. Cl. June 9, 2011). Ms. Hale formerly was a licensed practical nurse serving in the United States Army Reserve, and she sought relief in this court in the form of back pay and disability benefits as well as correction of her military records. *Id.* at *1. The remand was premised upon the government's representation that Ms. Hale had raised procedural issues which had not previously been considered by the Army Board but which might have affected the outcome of her claims. *Id.* at *2.

On remand, the Army Board conducted a fresh analysis of Ms. Hale's claims, but, again, it denied her requested relief. *See* Notice of Completion of Admin. Record Proceedings Attach. A, Oct. 20, 2011, ECF No. 17. At that juncture, Ms. Hale gave notice to the court that the Army Board's action on remand had not, in her view, provided a satisfactory resolution of her claims.

*See* Pl.'s Mem. in Resp. to the Army Review Bd. Decision, Oct. 21, 2011, ECF. No. 18; *see also* Rule 52.2(f)(1) of the Rules of the Court of Federal Claims ("RCFC") (requiring each party to file within 30 days of a final decision on remand, a notice regarding whether the "action on remand affords a satisfactory basis for disposition of the case").

Thereafter, the administrative record of the proceedings on remand were filed with the court, Ms. Hale sought judgment on the administrative record, and the government filed a cross-motion to dismiss or, alternatively, for judgment on the administrative record. Those motions have been fully briefed and are ready for disposition.

## BACKGROUND

Ms. Hale enlisted in the U.S. Air Force in May 1974 and subsequently served in different branches of the military, specifically, the U.S. Naval Reserve, the Texas Army National Guard, and then the U.S. Army Reserve. Her service was not continuous. Among other things, she was discharged from the Texas Army National Guard on February 1, 1990 with a characterization of general, under honorable conditions. Based on available records, she was not a member of any uniformed service from March 19, 1993 until November 30, 2004, when she enlisted in the U.S. Army Reserve. AR A-6 (Army Board's Decision on Remand).[1]

Ms. Hale's claims stem from her service on active duty from October 2006 until her final discharge in December 2007. AR A-6 to -14. Her service on active duty arose when the reserve unit to which she was assigned, the 160th MP Battalion, was ordered to active duty on October 8, 2006. AR A-6. While participating in pre-deployment training at Fort Bliss in San Antonio, Texas, Ms. Hale was exposed to pepper spray. *Id.* She suffered an allergic reaction that required emergency medical attention. Ms. Hale's doctor diagnosed her with reactive airway disease and instructed her to avoid exposure to pepper spray or other airway irritants. Compl. at 1. Thereafter she was deployed with her unit to Afghanistan to serve as a medic with the MP Battalion. AR A-6. While serving on active duty, she was recommended for promotion to sergeant in November 2006. AR A-15. Her promotion was never effected because of a flag on her record resulting from misconduct at the El Paso International Airport. AR A-6.[2] Ms. Hale contends that the commanding officer of her unit erred in deciding not to promote her from Specialist (E-4) to Sergeant (E-5) for two reasons: (1) the flag on her record was erroneously retained, and (2) her status as a candidate for promotion was overlooked when she was transferred to Afghanistan. Pl.'s Opp'n to Mot. to Dismiss, or Alternatively Mot. for Judgment on the Admin. Record ("Pl.'s Opp'n") at 7-8.

---

[1] The administrative record filed with the court by the Department of the Army pursuant to RCFC 52.1(a) is subdivided into tabs. The first letter refers to the tab, and the number after the hyphen refers to the particular page of the administrative record, *e.g.*, "AR A-25." The pages of the record are sequentially numbered without regard to the tabs.

[2] In military records, a flag is "initiated immediately when a soldier's status changes from favorable to unfavorable," Army Reg. 600-8-2 ¶ 1-10a, and results in a "[s]uspension of favorable personnel actions," *id.* ¶ 1-11, for the soldier subject to the flag.

2

Ms. Hale's service in Afghanistan was at Bagram Airfield. AR A-7, -9. After visits to the aid clinic at Bagram for, among other things, exposure to pepper spray, AR A-7, Ms. Hale was transferred to a position in the Intensive Care Unit ("ICU") at the Combat Support Hospital in Bagram, AR A-8. She claims she was required to perform work at the level of E-5 while working in the ICU, although she was not actually promoted to this position. Pl.'s Opp'n at 8. In June 2007, still serving in the ICU, Ms. Hale experienced additional health problems and was sent to Landstuhl Regional Medical Center in Germany for testing of cardiac, airway, and stress conditions. AR A-8. She also was tested for post-concussion symptoms and subclinical hypothyroidism. AR A-9. Also in June 2007, she was issued a temporary physical profile, providing she should have no exposure to pepper spray. *Id.* She was returned for duty at Bagram Airfield. *Id.* Late in that month, while at Bagram, a military doctor issued a permanent profile assigning Ms. Hale several physical limitations. *Id.* Her duty assignment with the battalion then was shifted to work as the mail room clerk and subsequently to the arms room. AR A-10. In September 2007, Ms. Hale made a second visit to the hospital in Germany for follow-up testing related to hypothyroidism and headaches. A physician recommended that she be returned to the United States, but the unit informed the physician that she could be treated in Afghanistan, and she was returned. AR A-11. On October 2, 2007, her immediate commander initiated an administrative separation against her under Army Regulation 635-200 ¶ 14-12b, for misconduct and patterns of misconduct. *Id.*[3] Promptly thereafter, she received a separation physical examination and a mental status evaluation. AR A-12. Concurrently, Ms. Hale consulted counsel and requested consideration of her case by an administrative separation board. *Id.* On October 10, 2007, Ms. Hale filed a complaint against her command unit for refusing to recognize her medical profiles. AR A-12 to -13.

On November 15, 2007, an administrative separation board convened at Bagram Airfield, and, after reviewing Ms. Hale's record, found that she had committed misconduct and that she was undesirable for retention in the military service. AR A-13 to -14. The board recommended that she be discharged under other than honorable conditions. AR A-14. The findings of the board were reviewed and approved by the appropriate separation authority, and Ms. Hale was transferred back to the United States and discharged on December 13, 2007, under other than honorable conditions. *Id.* Her rank was reduced to the lowest enlisted grade of Private (E-1). *Id.* Upon discharge, she was not transferred to the U.S. Army Reserve. *Id.*

Ms. Hale appealed the decision of the separation board and was granted partial relief by the Army Discharge Review Board. AR A-15. Her discharge was upgraded to general, under honorable conditions, and her rank was restored to Specialist (E-4). *Id.* The Board denied her requests for pay equal to the rank of E-5 and for an enlistment bonus. Compl. at 3.

Following Ms. Hale's discharge, the Social Security Administration declared plaintiff 100% disabled. Compl. at 3. In addition, she was granted 10% disability benefits by the Department of Veterans Affairs. *Id.* Ms. Hale alleges that the Department of Veterans Affairs refused to take into account the injuries she sustained while in Afghanistan because of her initial discharge under other than honorable conditions. *Id.* Ms. Hale claims she sent a notice of

---

[3] The particular elements of misconduct are not directly pertinent to Ms. Hale's claims before the court, and consequently they are not recited in this opinion.

disagreement with this latter decision to the Veterans Affairs Regional Office in Houston, but the notice was never received. *Id.*

She appealed the decisions of the Army Discharge Review Board and of the Department of Veterans Affairs to this court. Compl. at 3. In an opinion issued June 9, 2011, this court remanded the case to the Army Board to determine "(1) whether Ms. Hale's Specialist (E-4) rank was proper, (2) whether Ms. Hale was appropriately processed in the military disability system while simultaneously undergoing administrative separation procedures, and (3) whether Ms. Hale was properly discharged in light of her service." *Hale*, 2011 WL 2268961, at *2. On remand, the Army Board denied all relief sought by the plaintiff. AR A-27.

In reviewing her claims before this court, Ms. Hale requests that this court (1) order that she be promoted to Sergeant (E-5) with back pay plus interest, (2) grant an enlistment bonus of $15,000 plus interest, (3) correct her military records to reflect a medical discharge, (4) correct her military discharge to an honorable discharge for medical reasons, and (5) correct the documents of the Department of Veterans Affairs to reflect a timely appeal of its disability decision. Compl. at 1, 3. The government resists the grant of any relief, seeking dismissal of all of her claims on jurisdictional grounds and, alternatively, asking for affirmance of the Army Board's decision that Ms. Hale is not entitled to any further relief.

## STANDARDS FOR DECISION

### A. *Jurisdiction*

Subject matter jurisdiction must be established before a case can proceed on its merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998).[4] The jurisdiction of the court in this case is invoked under the Tucker Act, 28 U.S.C. § 1491(a)(1), which authorizes claims for monetary relief to be brought against the United States "founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." Because the Tucker Act does not itself create a substantive legal right enforceable against the United States, a claimant relying on the Act for jurisdictional purposes must identify a separate source of substantive law creating the right to money damages. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). "While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005) (quoting *United States v. Mitchell*, 463 U.S. 206, 218 (1983), and paraphrasing *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)).

---

[4]Although complaints by pro se litigants are generally held to "less stringent standards" than those prepared by counsel, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), the plaintiff must still meet the requirements for subject matter jurisdiction or the case must be dismissed, *Steel Co.*, 523 U.S. at 94.

4

B. *Motion to Dismiss for Failure to State a Claim*

The plaintiff must also satisfy the burden of pleading "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009).[5] If the plaintiff has not alleged a set of facts constituting a claim to relief, the complaint will be dismissed for failure to state a claim upon which relief can be granted. *See* RCFC 12(b)(6).

C. *Motion for Judgment on the Administrative Record*

On a motion for judgment on the record brought under RCFC 52.1, the court reviews the decision of the agency in accord with the applicable standard. *See* RCFC 52.1, Rules Committee Notes (2006) ("The standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases. The rule does not address those standards or criteria."). In this instance, "the scope of . . . review for challenges to military correction board decisions is 'limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (in turn quoting *de Cicco v. United States*, 677 F.2d 66, 70 (Ct. Cl. 1982))).

Insofar as the court's decision turns on the administrative record established by the agency, the court will consider "extra-record" evidence only in "extremely limited circumstances." *Mendez v. United States*, 103 Fed. Cl. 370, 378 (2012) (quoting *Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006)). In addressing the administrative record, the court must make findings of fact based on the record as if it were conducting a trial on that record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005).

## ANALYSIS

A. *Claim for Back Pay*

Ms. Hale requests back pay plus interest and correction of her military records to reflect a promotion to the rank of Sergeant (E-5). Compl. at 1. Her claims are based on the Military Pay Act, 37 U.S.C. § 204, which creates a substantive legal right enforceable against the United States for the salary of rank to which a service member "is appointed and in which he [or she] serves." *Smith v. Secretary of the Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004). The Military Pay

---

[5] When considering the complaint of a pro se litigant, the court should look to the record as well as the complaint to determine if the plaintiff "has a cause of action somewhere displayed." *Martinez v. United States*, 77 Fed. Cl. 318, 323 (2007) (quoting *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969)), *aff'd*, 260 Fed. Appx. 298 (Fed. Cir. 2008) (per curiam).

Act is a "money-mandating" statute that allows the court to grant monetary relief. *Id.* (citing *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)). In that connection, the Tucker Act authorizes the court to "provide an entire remedy and to complete the relief afforded by the judgment" by issuing equitable orders, but only in conjunction with claims brought for money damages. 28 U.S.C. § 1491(a)(2).[6] As a result, Ms. Hale may seek equitable relief in the form of a promotion only if that relief is tied to a claim for money damages. *See id.*; *Smith*, 384 F.3d at 1292 (holding court has power to award retirement pay and place plaintiff in appropriate retirement status to provide complete relief).

The Military Pay Act, with two exceptions, generally cannot be used to obtain the salary of a higher rank for which the plaintiff was not selected. *Smith*, 384 F.3d at 1294. Instead, "[a]s a general matter, a service member is entitled only to the salary of the rank to which he [or she] is appointed and in which he [or she] serves.'" *Id.* (citing *James v. Caldera*, 159 F.3d 573, 582 (Fed. Cir. 1998); *Dodson v. United States*, 988 F.2d 1199, 1208 (Fed. Cir. 1993); *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979)). The two exceptions occur when: (1) "the plaintiff has satisfied all the legal requirements for promotion, but the military has refused to recognize his [or her] status," or (2) "the decision not to promote the service member leads to the service member's compelled discharge." *Id.* at 1294-95.

Although Ms. Hale asserts that she is legally entitled to a promotion because she "worked in an E-5 position as an ICU nurse" and was placed on the active promotion list in a vacancy that "actually promoted her," she concedes that her promotion was never made final because of a flag on her file for adverse action. Pl's Opp'n at 18. A flag prohibits promotion or re-evaluation for a promotion. Army Reg. 600-8-2 ¶ 1-14d. Regardless of whether or not Ms. Hale performed duties equivalent to an E-5 position, she has failed to plead enough facts showing that she was promoted or that she satisfied all of the criteria for a promotion. Therefore she has not met her burden of showing a "clear-cut, legal entitlement" to the promotion, *Skinner*, 594 F.2d at 830, and this aspect of her complaint must be dismissed for failure to state a claim. *See Dysart*, 369 F.3d at 1313-15 (holding that officer did not have a clear legal right to a promotion where his nomination had been confirmed by the Senate, a vacancy for admiral became vacant, and his name was at the top of the promotion list but the President exercised discretion not to promote him); *Young v. United States*, No. 11-231, 2012 WL 758058, at *13 (Fed. Cl. Mar. 6, 2012) (holding plaintiff was not entitled to the back pay plus interest to which he would have been entitled had he not been declared ineligible for promotion); *Reilly v. United States*, 93 Fed. Cl. 643, 646-47, 649 (2010) (holding plaintiff did not satisfy legal requirements for promotion when selected by board for promotion and scheduled to be promoted, but promotion was ultimately delayed pending consideration of an incident of misconduct).

---

[6]Under the Tucker Act, "the court may, as an incident of and collateral to [a monetary] judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2).

B. *Payment of Prior-Service Enlistment Bonus*

Ms. Hale also claims that she is entitled to a $15,000 pre-enlistment bonus. Compl. at 3. In essence, she seeks an award of a "prior service enlistment bonus," payable to reserve soldiers that satisfy eligibility requirements stated in 37 U.S.C. § 308i, a part of the constellation of Military Pay statutes.[7]

---

[7] In pertinent part, Section 308i, titled "Special pay; prior service enlistment bonus," provides:

(a) Authority and eligibility requirements. —

(1) A person who is a former enlisted member of an armed force who enlists in the Selected Reserve of the Ready Reserve of an armed force for a period of three or six years in a critical military skill designated for such a bonus by the Secretary concerned and who meets the requirements of paragraph (2) may be paid a bonus as prescribed in subsection (b).

(2) A bonus may only be paid under this section to a person who meets each of the following requirements:

(A) The person has not more than 16 years of total military service and received an honorable discharge at the conclusion of all prior periods of service.

(B) The person was not released, or is not being released, from active service for the purpose of enlistment in a reserve component.

(C) The person is projected to occupy, or is occupying, a position as a member of the Selected Reserve in a specialty in which the person —

(i) successfully served while a member on active duty and attained a level of qualification while on active duty commensurate with the grade and years of service of the member; or

(ii) has completed training or retraining in the specialty skill that is designated as critically short and attained a level of qualification in the specialty skill that is commensurate with the grade and years of service of the member.

. . . .

(b) Bonus amounts; payment. —

The government argues that the prior-service enlistment bonus available for reservists under 37 U.S.C. § 308i(a)(2)(A) is discretionary, not mandatory. *See* Def.'s Mot. to Dismiss at 19-20 (citing 37 U.S.C. § 308i(a)(1) ("A person who is a former enlisted member of an armed force who enlists in the Selected Reserve of the Ready Reserve . . . may be paid a bonus.")). In support, the government contends that the Secretary of the Army "has discretion to deny the bonus[] even if the service member meets certain criteria listed in the statute." *Id.* at 20.

By using the permissive "may" in Section 308i(a)(1) respecting the Secretary's authority to pay a prior-service enlistment bonus to a reservist, the statutory authorization is presumptively discretionary, not mandatory. *See Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) ("There is a presumption that the use of the word 'may' in a statute creates discretion." (citing *McBryde v. United States*, 299 F.3d 1357, 1362 (Fed. Cir. 2002))). This presumption may be overcome, however, "when an analysis of congressional intent or the structure and purpose of the statute reveal one of the following: (1) the statute has 'clear standards for paying' money to recipients, (2) the statute specifies 'precise amounts' to be paid, or (3) the statute compels payment once certain condition precedent are met." *Id.* (quoting *Samish Indian Nation*, 419 F.3d at 1364-65 (in turn citing *Perri v. United States*, 340 F.3d 1337, 1342-43 (Fed. Cir. 2003))).

In this instance, the history of closely related military pay statutes is particularly instructive. Section 308i is part of Chapter 5 of Title 37, 37 U.S.C. §§ 301-374, which chapter is titled "Special and Incentive Pays." A number of the statutes in this Chapter use the word "may" in granting the Secretary of the pertinent service authority to provide "special pay." For example, 37 U.S.C. § 308(a)(1) provides that a reenlistment bonus "may" be paid to soldiers on active duty under certain conditions. Similarly, 37 U.S.C. § 308g(a) specifies that a bonus "may" be paid to "an eligible person who enlists in a combat or combat support skill of an

---

(1) The amount of a bonus under this section may not exceed —

    (A) $15,000, in the case of a person who enlists for a period of six years;

    (B) $7,500, in the case of a person who, having never received a bonus under this section, enlists for a period of three years; and

    (C) $6,000, in the case of a person who, having received a bonus under this section for a previous three-year enlistment, reenlists or extends the enlistment for an additional period of three years.

(2) Any bonus payable under this section shall be disbursed in one initial payment of an amount not to exceed one-half of the total amount of the bonus and subsequent periodic partial payments of the balance of the bonus. The Secretary concerned shall prescribe the amount of each partial payment and the schedule for making the partial payments.

(3) A person entitled to a bonus under this section who is called or ordered to active duty shall be paid, during that period of active duty, any amount of the bonus that becomes payable to the member during that period of active duty.

element" of the Ready Reserve other than the Selected Reserve. The statute at issue here correlatively provides that a prior service enlistment bonus "may" be paid to an eligible "former enlisted member of an armed force who enlists in the Selected Reserve of the Ready Reserve." 37 U.S.C. § 308i(a).

The closely related statute that provides for a reenlistment bonus to be paid to active duty soldiers, 37 U.S.C. § 308, was the subject of a comprehensive opinion by the Supreme Court in *United States v. Larionoff*, 431 U.S. 864 (1977). In that case, the Court began its analysis by observing that "[f]rom early in our history, Congress has provided by statute for payment of a reenlistment bonus to members of the Armed Services who reenlisted upon expiration of their term of service, or who agreed to extend their period of service before its expiration." *Larionoff*, 431 U.S. at 865. The question for decision was whether members of the armed services were entitled to receive the reenlistment bonus when they had agreed to extend their enlistments while classified as having a "critical military skill" but whose critical-skill listing was eliminated before they began service on their reenlistments. *Id.* at 868-73. In answering that question affirmatively, the Court assumed without discussion that the statute was money mandating and that eligible service members who met the statutory requirements for payment of the bonus were entitled to receive it. Earlier decisions of the Court of Claims made the same assumption. *See, e.g., Parker v. United States*, 461 F.2d 806 (Ct. Cl. 1972) (holding that prior reenlistments in any branch of the uniformed services must be considered in determining whether a current reenlistment was a "first reenlistment" qualifying for an additional bonus).

These decisions lead to the same money-mandating result as that derived from the more recently developed mode of analysis set out in the *Samish Indian Nation-Perri* line of cases. Section 308i satisfies at least the first of two of the three alternatives specified for money-mandating treatment by *Samish Indian Nation-Perri*. The statute sets out explicit standards for eligibility, and it specifies precise amounts to be paid. In consequence, the government's contention that 37 U.S.C. § 308i is not money mandating but rather calls for discretionary payments must be rejected. Ms. Hale has invoked a money-mandating statute to support her claim under the Tucker Act, and the court accordingly must address that claim on its merits.

Substantively, to state a claim for relief based upon entitlement to a prior-service enlistment bonus, the service member must have received "an honorable discharge at the conclusion of all prior periods of service." 37 U.S.C. § 308i(a)(2)(A). Although Ms. Hale contends that the classification of her most recent discharge from the Army was improper, she acknowledges that she was previously discharged from the Texas Army National Guard with a characterization of general. *See* Pl.'s Opp'n at 8. Under 37 U.S.C. § 308i(a)(2)(A), this prior discharge acts as a bar to her claim for an enlistment bonus. Therefore, Ms. Hale's claim for a prior-service enlistment bonus must be dismissed for failure to state a claim because the facts do not show that she was honorably discharged from all periods of prior service.

C. *Correction of Military Records to Convert Ms. Hale's Separation to Honorable Discharge for Medical Reasons*

Additionally, Ms. Hale asks the court to order correction of her military records to reflect an "[h]onorable [d]ischarge for medical reasons." Compl. at 1. The money-mandating statute

for this claim is 10 U.S.C. § 1201, which provides retirement disability benefits for soldiers who are determined to be unfit to perform their duties because of a physical disability incurred while on duty. The court reviews the decision of the Army Board denying Ms. Hale's request for a disability discharge under the arbitrary, capricious, contrary to law, or unsupported by substantial evidence standard. *See Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010). Review of this decision is limited to the record established before the Army Board. On remand, the Army Board affirmed its original findings and provided an explanation for its decision. *See* AR A-26 to -27.

To defeat a motion for judgment on the record, Ms. Hale must show by "cogent and clearly convincing evidence" that the decision of the Army Board was arbitrary and capricious. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Darl v. United States*, 200 Ct. Cl. 626, 633 (1973)); *see also Melendez Camilo*, 642 F.3d at 1044 ("When a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." (quoting *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004))). It is the responsibility of the Army or other service, not the judiciary, to decide who is fit or unfit to serve in the armed services. *Heisig*, 719 F.2d at 1156. Thus, where reasonable minds might differ, the court will defer to the conclusions reached by the Army Board. *See id.*

Ms. Hale alleges that she should have been processed by the military disability system because she was physically unfit to serve as evidenced by her medical records, the results of her physical fitness tests, and the Social Security Administration's decision to grant her a rating of 100% medical disability. Pl.'s Opp'n at 10. The Army Board's decision to the contrary was based on the fact that all but one of Ms. Hale's medical reports released her to duty with only temporary restrictions for exposure to pepper spray. AR A-24.[8] Moreover, the Army alleviated plaintiff's health issues in connection with "reactive airway disease" by transferring her to the ICU, where the condition would not be triggered because she would not be exposed to pepper spray. *Id.*

She further contends that a Medical Evaluation Board ("MEB") was warranted because she "did not pass the September 2007 [Army Physical Fitness Test] 2-mile run with Albuterol inhalers." Pl.'s Reply at 14. The record does not show that Ms. Hale failed the physical fitness test because of "reactive airway disease," nor does failure of a physical fitness test require referral to a MEB. *See generally* Army Reg. 635-640 ¶ 3-1.[9] The Army acted in accordance with its regulations in determining that the evidence as a whole did not support an inquiry into whether or not Ms. Hale was fit for duty and should be medically separated. *See* Army Reg.

---

[8] A report by one examining doctor requested that Ms. Hale be processed by a Medical Evaluation Board, but the Army Board found that his reports were made under duress to appease Ms. Hale "and to avoid harassment brought on by the applicant's belligerent and demanding behavior." AR A-24. Later medical examinations verified that Ms. Hale was fit for duty. *Id.*

[9] "The mere presence[] of an impairment does not, of itself, justify a finding of unfitness because of physical disability. In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier reasonably may be expected to perform because of their office, grade, rank, or rating." Army Reg. 635-40 ¶ 3-1.

10

635-40 ¶ 3-1(c) ("All relevant evidence must be considered in evaluating the fitness of a Soldier.") In any event, the separation board conducted an additional physical in October 2007 in conjunction with Ms. Hale's administrative discharge and found that she was fit for duty. AR A-12. Further, it was within the discretion of the General Court Martial Convening Authority to proceed with the administrative separation, without abating proceedings or simultaneously processing Ms. Hale through the military disability system, when the alleged disability was not a "cause or a substantial contributing cause of the misconduct." See Army Reg. 635-40 ¶ 4-3.[10]

Lastly, Ms. Hale asserts that the Social Security Administration's determination of 100% disability benefits should inform the Army Board's assessment of her fitness for duty. Pl.'s Opp'n at 10. However, social security benefits determinations are not comparable to the military's evaluation of a solder's fitness for duty and cannot be used to support Ms. Hale's contentions. See Lewis v. United States, 99 Fed. Cl. 17, 19 (2011) (holding that the Board for Correction of Naval Records has no obligation to adopt Social Security Administration decisions of disability benefits because the two agencies consider different criteria); DeBatto v. United States, 87 Fed. Cl. 172, 178 (2009) (holding that disability findings made by the Department of Veterans Affairs are not binding on military services because the ratings serve distinct purposes), aff'd, 393 Fed. Appx. 722 (Fed. Cir. 2010) (per curiam) (Fed. Cir. R. 36). The decision of the Army Board to reject a medical disability discharge was in accordance with the law and supported by substantial evidence. Therefore, judgment on the record regarding this claim must be granted in favor of the government.

### D. *Review of the Decision of the Department of Veterans Affairs*

Ms. Hale requests that this court amend the decision of the Department of Veterans Affairs to reflect a timely appeal of the agency's decision to grant plaintiff 10% of her claimed disability benefits. Compl. at 1. As part of this relief, she asks the court to award her monetary benefits corresponding to an increased disability rating. Pl.'s Opp'n at 3.

The United States Court of Appeals for Veterans Claims exercises exclusive jurisdiction over the Department of Veterans Affairs' decisions regarding a veteran's claim to disability benefits. See 38 U.S.C. § 7252(a); Addington v. United States, 94 Fed. Cl. 779, 782 (2010); Carlisle v. United States, 66 Fed. Cl. 627, 633 (2005). Ms. Hale's claim for 100% disability benefits falls squarely within that exclusive jurisdiction. See Carlisle, 66 Fed. Cl. at 633 (holding that Court of Federal Claims does not have jurisdiction to review a decision by the Department of Veterans Affairs regarding disability benefits). Therefore, this court does not have subject matter jurisdiction over this claim.

---

[10]In pertinent part, this regulation provides that "an enlisted Soldier may not be referred for, or continue, physical disability processing when action has been started under any regulatory provision which authorizes a characterization of service of under other than honorable conditions . . . [unless t]he disability is the cause, or a substantial contributing cause, of the misconduct that might result in a discharge." Army Reg. 635-40 ¶ 4-3.

11

## CONCLUSION

For the reasons stated, the government's motion to dismiss or, alternatively, for judgment on the administrative record is GRANTED. Ms. Hale's claims for back pay, interest, a promotion, and a prior-service enlistment bonus are dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Judgment on the administrative record is entered in favor of the government on Ms. Hale's claim for correction of her military records to reflect an honorable discharge for medical reasons. Finally, her claim for correction of documents of the Department of Veterans Affairs is dismissed pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. The clerk will enter judgment in accord with this disposition.

No costs.

It is so ORDERED.

Charles F. Lettow
Judge